**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | |
|---|---|
| IN RE PROVECTUS BIOPHARMACEUTICALS, INC. DERIVATIVE LITIGATION | Case No. 3:14-cv-00372-PLR-HBG<br><br>District Judge Pamela L. Reeves<br><br>Magistrate Judge H. Bruce Guyton |

**<u>STIPULATION OF SETTLEMENT</u>**

N JSH 1655972 v1

2815173-000018 04/01/2016
M KLR 2760466 v2
2815173-000018 04/29/2016

This Stipulation of Settlement, dated as of April 29, 2016 (the "Stipulation"), is made and entered into by and among the following Settling Parties[1]: (i) Karla Hurtado and Paul Montiminy ("Lead Plaintiffs" or "Plaintiffs") individually and derivatively on behalf of nominal Defendant, Provectus Biopharmaceuticals, Inc. ("Provectus" or the "Company"), by and through their counsel of record in the Litigation; and (ii) H. Craig Dees, Timothy C. Scott, Jan E. Koe, Kelly M. McMasters, and Alfred E. Smith, IV (collectively, "Defendants"), by and through their counsel of record. Subject to the approval of the Court, the Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Litigation and Released Claims, upon and subject to the terms and conditions hereof.

## I.    THIS AND RELATED LITIGATION

### A.    The Litigation

On or about June 4, 2014, Karla Hurtado, acting by and through counsel, filed a lawsuit styled *Karla Hurtado, Derivatively on Behalf of Nominal Defendant Provectus Biopharmaceuticals, Inc. v. H. Craig Dees, et al.*, Case 3:14-cv-01263, in the U.S. District Court for the Middle District of Tennessee (the "Hurtado Lawsuit"). On or about July 25, 2014, the Hurtado Lawsuit was transferred to the U.S. District Court for the Eastern District of Tennessee ("the Court" or "this Court"), styled as *Karla Hurtado, Derivatively on Behalf of Nominal Defendant Provectus Biopharmaceuticals, Inc. v. H. Craig Dees, et al.*, Case 3:14-cv-00372. On or about October 24, 2014, Paul Montiminy, acting by and through counsel, filed a lawsuit styled *Paul Montiminy, Derivatively on Behalf of Nominal Defendant Provectus Biopharmaceuticals, Inc. v. H. Craig Dees, et al.*, Case 3:14-cv-00503, in this Court (the "Montiminy Lawsuit").

---

[1]    All capitalized terms not otherwise defined are defined in Section IV, 1*infra.*

On or about December 29, 2014, this Court entered an order (Docket #28) consolidating the Hurtado Lawsuit and the Montiminy Lawsuit as *In re Provectus Biopharmaceuticals, Inc. Derivative Litig.*, Case 3:14-cv-00372 (the "Litigation"), and appointing Harwood Feffer LLP and Gainey McKenna & Egleston as co-lead counsel and the Bramlett Law Offices as liaison counsel. On April 9, 2015, this Court entered an Order (Docket #33) staying proceedings in the Litigation pending resolution of a motion to dismiss a putative federal securities class action against the Company and four of its officers and directors, styled *In re Provectus Biopharmaceuticals, Inc. Securities Litig.*, Case No. 3:14-cv-00338-PLR-HBG (the "Securities Litigation").

### B.     The State Court Litigation

On or about October 28, 2014, Chris Foley, acting by and through counsel, filed a lawsuit styled *Chris Foley, Derivatively on Behalf of Nominal Defendant Provectus Biopharmaceuticals, Inc. v. H. Craig Dees, et al.*, Civil Action No. 188450-1, in the Chancery Court of Knox County, Tennessee (the "Foley Lawsuit").

On June 24, 2015, Sean Donato, derivatively on behalf of the Company, filed a lawsuit styled *Sean Donato, Derivatively on Behalf of Provectus Biopharmaceuticals, Inc. v. H. Craig Dees, et al.,* Case No. 189848-1 in the Chancery Court of Knox County, Tennessee (the "Donato Lawsuit") (the Foley Lawsuit and the Donato Lawsuit, collectively, the "State Court Litigation").

### C.     The Securities Litigation

On April 6, 2015, an Amended Class Action Complaint (the "Securities Complaint") was filed in the Securities Litigation, on behalf of purchasers of Provectus securities between December 17, 2013 and May 22, 2014, against Provectus, H. Craig Dees, Timothy C. Scott, Peter R. Culpepper, and Eric Wachter. The Securities Complaint seeks an unspecified amount of

damages and alleges that the defendants therein violated Section 10(b) of the Securities Act of 1934 (the "Securities Act"), and that the individual defendants therein violated Section 20(a) of the Securities Act by disseminating materially false and misleading information to the investing public about the commercialization of PV-10, and that the defendants therein had actual knowledge of and access to materially adverse facts concerning the Company's communications with the Food and Drug Administration ("FDA") regarding PV-10.  While a motion to dismiss the Securities Litigation was pending, the parties to that litigation participated in a mediation and subsequent negotiations, the result of which was the filing, on March 9, 2016, of a Stipulation of Settlement.  A hearing for preliminary approval of the settlement of the Securities Litigation is set for April 7, 2016.

> ### D.     Agreement to Settle this Litigation

While the parties to the Securities Litigation were negotiating and documenting the Stipulation of Settlement in the Securities Litigation, the Settling Parties, through counsel, engaged in negotiation to settle this Litigation.   The Settling Parties, subject to the approval of this Court and after thorough negotiation, have agreed to the terms hereof in settlement of this Litigation.

## II.     DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

 Each Defendant has expressly denied and continues to deny all charges of wrongdoing, fault, liability or damage arising out of any of the conduct, acts, or omissions alleged by Plaintiffs in this Litigation and/or in the State Court Litigation.  Pursuant to the terms set forth below, this Stipulation shall never, in any event, be construed as or deemed to be evidence of an admission or concession by any Defendant with respect to any claim of any wrongdoing, fault, liability, or damage whatsoever.

Nonetheless, Defendants have concluded that further conduct of the Litigation (and/or, the State Court Litigation) would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation and that the settlement memorialized in this Stipulation, after approval by the Court, operate as a full release and bar of and to the claims asserted in the Litigation, the State Court Litigation and otherwise. Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation. Defendants have, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III. CLAIMS OF PLAINTIFF AND BENEFITS OF SETTLEMENT

Lead Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims asserted. However, counsel for Lead Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial, as well as potential appeals. Lead Plaintiffs have taken into account the uncertain outcome and the risk of continued litigation, especially in complex actions such as the Litigation, and the difficulties and delays inherent in such litigation. Lead Plaintiffs are also mindful of the inherent problems of proof and possible defenses to the claims of breach of fiduciary duty and abuse of control asserted in the Litigation. Lead Plaintiffs believe that the settlement agreement set forth in this Stipulation confers substantial benefits upon the Company and its shareholders. Based on this evaluation, Lead Plaintiffs and their counsel have determined that the Settlement set forth in the Stipulation is in the best interests of Lead Plaintiffs, the Company and the Company's stockholders and, therefore, determined that it is desirable and beneficial to Lead Plaintiffs, the Company and the

Company's stockholders that the Litigation be settled upon the terms and conditions set forth in this Stipulation.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties, by and through their undersigned counsel, that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled and released, and the Litigation shall be dismissed with prejudice, upon and subject to the terms and conditions of this Stipulation, as follows:

### A.    Definitions

As used in this Stipulation, the following terms have the meanings specified below.  In the event of any inconsistency between any definition set forth below and any definition set forth in any document attached as an exhibit to this Stipulation, the definition set forth below shall control.

1.1.    The "Company" or "Provectus" means Provectus Biopharmaceuticals, Inc.

1.2.    "Corporate Governance Changes" means those matters listed in ¶¶ 2.1 and 2.2.

1.3.    "Court" or "this Court" means the United States District Court for the Eastern District of Tennessee.

1.4.    "Current Provectus Shareholders" means any Person who owned Provectus common stock as of the date of the execution of this Stipulation and who continues to hold such Provectus common stock as of the date of the Settlement Hearing, excluding the Individual Defendants, the officers and directors of Provectus, members of their immediate families, and their legal representatives, heirs, successors, or assigns and any entity in which the

Individual Defendants have or had a controlling interest.

1.5.    "Defendants" means Provectus, H. Craig Dees, Timothy C. Scott, Jan E. Koe, Kelly M. McMasters, and Alfred E. Smith, IV.

1.6.    "Defendants' Counsel" means Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.

1.7.    "Donato Lawsuit" means litigation styled *Sean Donato, Derivatively on Behalf of Provectus Biopharmaceuticals, Inc. v. H. Craig Dees, et al.,* Case No. 189848-1 in the Chancery Court of Knox County, Tennessee.

1.8.    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 6.1 of this Stipulation have been met and have occurred.

1.9.    "Final" means, with respect to any order of the court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired.  For purposes of this Paragraph, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.

1.10.    "Foley Lawsuit" means litigation styled *Chris Foley, Derivatively on Behalf of Nominal Defendant Provectus Biopharmaceuticals, Inc. v. H. Craig Dees, et al.*, Civil Action No. 188450-1, in the Chancery Court of Knox County, Tennessee.

1.11.    "Individual Defendants" mean H. Craig Dees, Timothy C. Scott, Jan E. Koe, Kelly M. McMasters, and Alfred E. Smith, IV.

1.12.    "Judgment" means the Final Approval Order and Judgment to be rendered by the Court, in the form attached as Exhibit D hereto.

1.13.    "Litigation" or "this Litigation" mean *In re Provectus Biopharmaceuticals, Inc. Derivative Litigation*, Civil Action No. 3:14-cv-00372-PLR-HBG, pending in the United States District Court for the Eastern District of Tennessee.

1.14.    "Notice" means the Notice of Pendency and Proposed Settlement of Shareholder Derivative Action, substantially in the form attached hereto as Exhibit C.

1.15.    "Notice Order" means the Order of Court preliminarily approving this Stipulation and providing for notice to shareholders in substantially the form attached as Exhibit B.

1.16.    "Person(s)" means an individual, corporation, limited liability company, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity together with their spouses, heirs, predecessors, successors, representatives, or assignees of any of the foregoing, and any other representative or person or entity acting on behalf of, or claiming under, any of these persons and entities.

1.17.    "Plaintiffs" or "Lead Plaintiffs" mean Karla Hurtado and Paul Montiminy.

1.18.    "Plaintiffs' Attorney Fee and Expense Amount" means attorney fees and expenses to be paid to Plaintiffs' Lead Counsel on behalf of Plaintiffs' Lead Counsel, Plaintiffs' Liaison Counsel, and State Court Plaintiffs' Counsel and is the amount agreed to by the Settling

Parties, and shall constitute final and complete payment for Plaintiffs' attorneys' fees and for the reimbursement of expenses that have been incurred or will be incurred on behalf of Plaintiffs in connection with the Litigation.

1.19.    "Plaintiffs' Lead Counsel" means Harwood Feffer LLP and Gainey McKenna & Egleston.

1.20.    "Plaintiffs' Liaison Counsel" means Bramlett Law Offices.

1.21.    "Related Persons" means each of the Defendants and their past or present agents, officers, directors, attorneys, accountants, auditors, advisors, insurers, co-insurers, re-insurers, spouses, immediate family members, heirs, executors, personal representatives, estates, administrators, trusts, predecessors, successors, and assigns or other individual or entity in which any Defendant has a controlling interest, and each and all of their respective past and present officers, directors, employees, agents, affiliates, parents, subsidiaries, divisions, attorneys, accountants, auditors, advisors, insurers, co-insurers, re-insurers, heirs, executors, personal representatives, estates, administrators, trusts, predecessors, successors, and assigns.

1.22.    "Released Claims" shall collectively mean, to the fullest extent allowed by law,  any and all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, local, statutory, common or foreign law, or any other law, rule, or regulation, including Unknown Claims (as defined in ¶ 1.30 below), for compensatory damages, punitive damages, restitution, disgorgement or any other legal or equitable relief that could be sought under any legal theory, (a) that have been asserted by Plaintiffs derivatively on behalf of the Company against the Released Persons in this Litigation, or (b) that Plaintiffs, Provectus or any Current Provectus Shareholder has or could have asserted in any forum that arise out of, relate to or are based upon the allegations, transactions, facts, matters or

occurrences, representation, misrepresentations, or omissions involved, set forth, or referred to in any pleadings filed in the Litigation, including without limitation allegations relating to public statements relating to the status or likelihood of FDA approval of PV-10, transactions in Provectus securities, the Individual Defendants' performance of their duties as officers and/or directors of the Company, or any other action taken or alleged to have been taken by the Individual Defendants as identified in the pleadings filed in the Litigation (or, the State Court Litigation). "Released Claims" does not include: (i) claims to enforce the Settlement; and (ii) any claims asserted in the Securities Litigation (which are being resolved in the settlement of the Securities Litigation). "Released Claims" includes "Unknown Claims" as defined herein.

1.23.    "Released Person(s)" means each and all of the Individual Defendants, and each and all of their Related Parties. "Released Person" means, individually, any of the Released Persons.

1.24.    "Releasing Parties" means Provectus, Plaintiffs (both individually and derivatively on behalf of Provectus), any other Provectus shareholder on behalf of Provectus, and Plaintiffs' Counsel. "Releasing Party" means, individually, any of the Releasing Parties.

1.25.    "Securities Litigation" means *In re Provectus Biopharmaceuticals, Inc. Securities Litigation*, Case No. 3:14-cv-00338-PLR-HBG pending in the United States District Court for the Eastern District of Tennessee.

1.26.    "Settlement" means the settlement of the Litigation as embodied in this Stipulation.

1.27.    "Settling Parties" means, collectively, each and all of the Plaintiffs (on behalf of themselves and derivatively on behalf of Provectus), and Defendants. "Settling Party" means, individually, any of the Settling Parties.

1.28.     "State Court Litigation" means, collectively, the Foley Lawsuit and the Donato Lawsuit.

1.29.     "State Court Plaintiffs' Counsel" means Bramlett Law Offices, Gainey McKenna & Egleston, and Federman & Sherwood.

1.30.     "Unknown Claims" means any Released Claims that Lead Plaintiffs or Defendants do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this Settlement. Unknown Claims include those claims in which some or all of the facts comprising the claim may be suspected, or even undisclosed or hidden. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Settling Parties shall be deemed to have by operation of the Judgment expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs shall expressly, upon the Effective Date, be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not

concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs acknowledge that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

2.    **The Settlement - Corporate Governance Changes**.    The Company has implemented and/or shall implement the following Corporate Governance Changes as a result of the prosecution and settlement of this Litigation:

2.1.    The Company will adopt a Disclosure Controls and Procedures Policy with respect to disclosure controls and procedures generally, and which specifically addresses the processes employed for recording, processing, summarizing, reviewing and, to the extent applicable, certifying the Company's annual reports on Form 10-K, quarterly reports on Form 10-Q, proxy statements, information statements, registration statements, earnings releases, earnings guidance, public disclosures about material acquisitions or dispositions, press releases, correspondence containing financial information broadly disseminated to security holders and other reports or communications (collectively, the "Covered Reports"). A copy of the proposed Disclosure Controls and Procedures Policy is attached as Exhibit A.

2.2.    The Disclosure Controls and Procedures Policy includes the following provisions, in summary form:

(a)    The Corporation shall establish a Disclosure Committee to supervise the preparation of, and be responsible for the disclosures contained in the Covered Reports, and monitor and evaluate the effectiveness of the Company's disclosure controls and procedures.

(b)     Management of the Corporation, under the leadership of the Company's Chief Executive Officer and Chief Financial Officer, shall be responsible for designing, establishing, and maintaining the Company's disclosure controls and procedures, including the Policy.

(c)     Covered Reports shall be prepared by management under the leadership of the Company's Chief Executive Officer or Chief Financial Officer, and the Chief Executive Officer and Chief Financial Officer, together with the Disclosure Committee, other members of management, and external legal counsel, shall review the Company's annual reports on Form 10-K, quarterly reports on Form 10-Q, proxy statements, information statements, registration statements, earnings releases, earnings guidance, public disclosures about material acquisitions or dispositions and other correspondence containing financial information broadly disseminated to security holders ("Principal Covered Reports").

(d)     The Company's Chief Executive Officer and Chief Financial Officer, together with appropriate members of management and the Disclosure Committee, should discuss each such Principal Covered Report with the Company's independent registered public accounting firm to obtain their views on, and comfort with respect to, the disclosures contained therein.

(e)     The Company's Chief Executive Officer and Chief Financial Officer, together with appropriate members of management and the Disclosure Committee, should discuss with the Company's Audit Committee each Principal Covered Report, the disclosure and internal controls and procedures that have been undertaken to support the disclosure contained in the Principal Covered Report and the related certifications, if any, and any issues that have arisen in connection with the preparation and review of the Principal Covered Report.

N JSH 1655972 v1

2815173-000018 04/01/2016
M KLR 2760466 v2
2815173-000018 04/29/2016

(f)     The Company's Chief Executive Officer and Chief Financial Officer will be required to make the certifications called for by Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 in connection with each of the Company's annual report on Form 10-K and quarterly reports on Form 10-Q.

(g)     The Company's Chief Executive Officer and Chief Financial Officer, together with the Disclosure Committee and other members of management, should review and evaluate the effectiveness of the Company's disclosure controls and procedures each quarter, giving due consideration to areas that are the most sensitive or that have a higher risk-profile and warrant particular attention. The Company's Board of Directors should review the results of these evaluations annually.

(h)     Covered Reports should be reviewed by the other committees of the Board of Directors, including the Compensation Committee and the Nominating and Corporate Governance Committee, as appropriate.  With respect to each Covered Report, the Company's external legal counsel should prepare and maintain a written record of the review process.

2.3.     The Company will use its best efforts to replace one of its existing directors with an independent, outside director by June 30, 2017.

2.4.     Provectus and the Individual Defendants acknowledge and agree that that Plaintiffs' efforts in the prosecution and settlement of the Litigation were a material factor in the Company's decision to adopt and/or implement the Corporate Governance Changes.

### 3.     Notice Order and Settlement Hearing

3.1.     As soon as practicable after execution of this Stipulation, Plaintiffs' Lead Counsel shall submit the Stipulation to the Court and shall apply for entry of the Notice Order requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation,

N JSH 1655972 v1

2815173-000018 04/01/2016
M KLR 2760466 v2
2815173-000018 04/29/2016
Case 3:14-cv-00503-PLR-HBG   Document 22   Filed 04/29/16   Page 14 of 23   PageID #: 113

Plaintiff's Lead Counsel shall request that the Court hold a hearing (the "Settlement Hearing") at which time Plaintiffs' Lead Counsel shall request that the Court finally approve the Settlement of the Litigation as set forth herein.

3.2. At the Settlement Hearing, the Settling Parties shall jointly request entry of a Judgment, substantially in the form attached hereto as <u>Exhibit D</u>:

(a) finally approving the Settlement as fair, reasonable, and adequate, and directing its consummation pursuant to its terms;

(b) directing that the Litigation be dismissed without costs and with prejudice, and releasing the Released Claims;

(c) permanently barring and enjoining the institution and prosecution, by Plaintiffs (individually and derivatively on behalf of Provectus) and Provectus and Current Provectus Shareholders, of any other action against the Released Persons in any court asserting any Released Claims; provided, however, that the Judgment shall not bar any action or claim to enforce the terms of the Settlement, as approved by the Court, or the Judgment;

(d) reserving jurisdiction over the Litigation, including all future proceedings concerning the administration, consummation, and enforcement of this Stipulation;

(e) finding, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delaying and directing entry of a final judgment;

(f) approving and awarding Plaintiffs' Attorney Fee and Expense Amount;

(g) containing such other and further provisions consistent with the terms of this Stipulation to which the Settling Parties expressly consent in writing and which the Court approves.

### 4. Releases and Bar Order

N JSH 1655972 v1

2815173-000018 04/01/2016
M KLR 2760466 v2
2815173-000018 04/29/2016
Case 3:14-cv-00503-PLR-HBG   Document 22   Filed 04/29/16   Page 15 of 23   PageID #: 114

4.1.    Upon the Effective Date, Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons and shall have covenanted not to sue the Released Persons with respect to all such Released Claims, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting any Released Claim against the Released Persons except to enforce the releases and other terms and conditions contained in this Stipulation or the Judgment entered pursuant thereto.

## 5.    Plaintiffs' Attorney Fees and Expense Amount

5.1.    In recognition of the substantial benefit to Provectus obtained through the prosecution of the Litigation, Defendants shall cause to be paid from insurance proceeds within ten (10) days of the entry of the Final Approval Order and Judgment by the Court and (if separate) an order approving the agreed upon Plaintiffs' Attorney Fee and Expense Amount of $300,000 to Plaintiffs' Lead Counsel for the benefit of Plaintiffs' Lead Counsel, Plaintiffs' Liaison Counsel and State Court Litigation Plaintiff's Counsel.  In the event that, before the Effective Date, the Settlement is set aside or the award of attorneys' fees and expenses is set aside or modified, Plaintiffs' Lead Counsel shall promptly return to Defendants' insurer all attorneys' fees and expenses paid out that have been set aside or modified.

5.2.    Further, Plaintiffs' Lead Counsel shall have sole responsibility and authority to distribute the Plaintiffs' Attorney Fee and Expense Amount to all Plaintiffs' attorneys in their sole judgment.  The Released Persons shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Lead Counsel, Plaintiffs' Liaison Counsel and State Court Litigation Plaintiff's Counsel and/or any other person who may assert some claim thereto, of the Plaintiffs' Attorney Fee and Expense Amount.

## 6. Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination

6.1.     The Effective Date of the Stipulation, and the Settlement incorporated therein, shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Notice Order, as required by ¶ 3.1 hereof;

(b)     the Court has approved the Settlement as described herein, following notice to shareholders as defined in ¶ 1.14 and a Settlement Hearing, and has entered the Judgment, in accordance with ¶ 3.2 hereof; and

(c)     the Judgment has become Final, as defined in ¶ 1.9 hereof.

6.2.     If any of the conditions specified in ¶ 6.1 above are not met, then the Stipulation shall be canceled and terminated subject to ¶ 6.3, unless counsel for the Settling Parties mutually agree in writing to proceed with the Stipulation.

6.3.     Unless otherwise ordered by the Court, in the event the Effective Date does not occur or this Stipulation shall terminate, or be canceled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Settlement as described herein is not approved by the Court or the Judgment is reversed or vacated following any appeal taken there from, then:

(a)     the Settling Parties shall be restored to their respective positions in the Litigation as of April 29, 2016, with all of their respective claims and defenses preserved as they existed on that date;

(b)     the terms and provisions of the Stipulation shall be null and void and shall have no further force and effect with respect to the Settling Parties, and neither the existence nor

the terms of this Stipulation (nor any negotiations preceding this Stipulation nor any acts performed pursuant to, or in furtherance of, this Stipulation) shall be used in this Litigation or in any other proceeding for any purpose; and

(c)     any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

6.4.     If the Court does not enter the Judgment in the form attached as <u>Exhibit D</u> hereto, or if the Court enters the Judgment and appellate review is sought and, on such review, the entry of the Judgment is finally vacated, modified, or reversed, then this Stipulation and the Settlement incorporated therein shall be cancelled and terminated, unless all parties who are adversely affected thereby, in their sole discretion within thirty (30) days from the date of the mailing of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as modified by the Court or on appeal. Such notice may be provided on behalf of Plaintiffs by Plaintiff's Lead Counsel. No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein.   Without limiting the foregoing, Defendants shall have, in their sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of the Litigation against them.

**7.     Miscellaneous Provisions**

7.1.     The Settling Parties: (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

7.2.    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them. The Settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.

7.3.    While Defendants deny that the claims advanced in the Litigation were meritorious, they will not assert in any public statement that the Litigation was not filed in good faith and/or is not being settled voluntarily after consultation with competent legal counsel.  The Judgment will contain a finding that, during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the terms of the Settlement were negotiated in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

7.4.    Neither this Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, any allegation made in the Litigation, or any wrongdoing or liability of Defendants or any Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault, or omission of any of Defendants or any Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Neither this Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement shall be

admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, except that Defendants may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.5.    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.  After prior notice to the Court, the Settling Parties may agree to reasonable extensions of time to carry out any provisions of this Stipulation.

7.6.    The Stipulation, including its Exhibits which are material parts thereof, constitutes the entire agreement among the parties hereto and no representations, warranties, or inducements have been made to any party concerning the Stipulation other than the representations, warranties, and covenants contained and memorialized in such documents.  It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Stipulation is entered into may turn out to be other than or different from the facts now known to each party or believed by such party to be true; each party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Stipulation shall be in all respects effective and not subject to termination by reason of any such different facts or law. Except as otherwise provided herein, each party shall bear its own costs.

7.7.    Each counsel or other Person executing the Stipulation and any documents prepared in furtherance of the Stipulation on behalf of any party hereto, hereby warrants that such Person has the full authority to do so.

7.8.     The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

7.9.     The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto, including any corporation or other entity into or with which any party merges, consolidates, or reorganizes.

7.10.    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation.

7.11.    Nothing in this Stipulation, Settlement, or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, or work product immunity.

7.12.    This Stipulation and the Settlement contemplated by it, and all disputes arising out of or relating to the Stipulation and Settlement shall be construed and enforced in accordance with, and governed by, the substantive laws and procedural rules of the State of Tennessee without giving effect to Tennessee's choice-of-law principles.

7.13.    Any written notice required pursuant to or in connection with this Stipulation shall be addressed to the parties' counsel as designated and identified below.

**IN WITNESS WHEREOF**, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys.

Dated: April 21, 2016

GAINEY, McKENNA & EGGLESTON

By: */s/ Thomas J. McKenna*
    Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South
New York, NY 10018
Telephone:    (212) 983-1300
Facsimile:    (212) 983-0383
Email:  tjmckenna@gme-law.com
           gegleston@gme-law.com

Dated: April 29, 2016

HARWOOD FEFFER LLP

By: */s/ Robert I. Harwood*
    Robert I. Harwood
488 Madison Avenue
New York, NY 10022
Telephone:    (212) 935-7400
Facsimile:    (212) 753-3630
Email: rharwood@hfesq.com

*Lead Counsel for Lead Plaintiffs*

Dated: April 29, 2016

BRAMLETT LAW OFFICES

By: */s/ Paul Kent Bramlett*
    Paul Kent Bramlett  (#7387)
P.O. Box 150734
Nashville, TN 37215
Telephone:    (615) 248-2828
Facsimile:    (866) 816-4116
Email: pknashlaw@aol.com

*Liaison Counsel for Lead Plaintiffs*

Dated: April 29, 2016

BAKER, DONELSON, BEARMAN,

CALDWELL & BERKOWITZ, P.C.


By: */s/ John S. Hicks*
John S. Hicks (BPR # 010478)
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone:     (615) 726-7337
Facsimile:     (615) 744-7337
Email: jhicks@bakerdonelson.com

*and*

Kristine Roberts (BPR # 023856)
*(admitted pro hace vice)*
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Email: klroberts@bakerdonelson.com

*Counsel for Defendants*

N JSH 1655972 v1

2815173-000018 04/01/2016
M KLR 2760466 v2
2815173-000018 04/29/2016
Case 3:14-cv-00503-PLR-HBG   Document 22   Filed 04/29/16   Page 23 of 23   PageID #: 122